Good morning, your honors. Jane Nelson on behalf of Deon Charles. I'll do my best to watch my own clock, and I'll try to reserve two minutes for rebuttal if I can. The question in this case is whether the district court should have applied the Fair Sentencing Act to the career offender guideline when it ruled on Mr. Charles' 3582 motion. Counsel, I understand the logic of your position entirely in that Amendment 750 lowered the statutory maximum and the career offender guideline's calculation takes into account the maximum. But do you have any case support? It appears to me that all the cases have gone against your position in other circuits. Is that true or not true? Generally speaking, I would agree with that, your honor. And if your honor is referring specifically to the case decided by the government in its Monday evening 28J letter, yeah, that tends to be the case. But I think I'd respond with a couple of points. It's difficult to respond in great detail to the wealth of cases the government has decided. But I have a few observations about this. First, obviously none of those cases are binding on this panel. They're all either unpublished or out of circuit. Two, as I recall, at least a couple of them didn't really address the issue that Mr. Charles has raised. A couple of them at least sought relief under the Supreme Court's decision in Freeman, which is not an argument that we're making. And I think the balance of the cases, your honor, turn on a conclusion that because the Fair Sentencing Act isn't retroactive to people who were sentenced before its effective date, that you can't take account for the Fair Sentencing Act when you are making the career-friendly determination in the context of 3582. And we disagree with that, your honor. We're not arguing that the Fair Sentencing Act has retroactive applications such that Mr. Charles is now subject to a five-year mandatory minimum and the district court could sentence him as low as that. We're saying that when Amendment 750 opens the door to a 3582 and you conduct the guidelines analysis, you go through 2D1.1, and then as required by the career offender guideline, you calculate the career offender guideline. Which now differs. Which now differs because his statutory maximum has been reduced. Of course, in making it retroactive, the guideline commission specifically said it was not affecting no guideline, correct? I don't believe it said that, your honor. But the – what I believe your honor might be referring to is a statement in – let me pull it up. In – it's a statement that the amendment would not affect the sentences of those offenders who were sentenced as career offenders. Actually, your honor, what the amendment says is not all crack cocaine offenders sentenced after November 1st – Where are you reading from? This is from Appendix C at 394. It's Amendment 750 itself. Amendment 750? They even specifically said they weren't intending to affect them. Well, your honor, what the language says is not all crack cocaine offenders sentenced after November 1st, 2011 will receive a lower sentence as a result of the change to the drug quantity table. And it was making reference to career offenders. So, first of all, your honor, that remark in the amendment doesn't actually refer to 3582 defendants. It's referring specifically to crack cocaine offenders sentenced after November 1st, 2011. But even if it were referring to 3582, it's actually not – it's actually partially correct. Because other offenders – they say this is what they think they're doing. And all the courts so far think they're doing it. I'm sorry, your honor, I'm having difficulty hearing you. All the courts so far think that's what's happening. And that's what they think is happening. They said if other offenders are sentenced as career offenders and aren't career offenders as a result of the sentencing timeline changes, their ranges are unaffected by a reduction in the drug quantity table. That's what we're talking about. There's going to be a retroactive change because of the drug quantity table change, correct? Well, your honor, I disagree. I think that the specific comment that your honor is referring to is actually specifically referring to offenders sentenced after November 1st, 2011, if I'm reading the same passage that your honor is. And so on its face, it doesn't actually apply. So you think it won't appear to those sentenced after that, but it will appear to those sentenced before that? It will apply to those sentenced before that? Well, I do think it applies to Mr. Charles, your honor. And I agree with the amendment to the extent that some career offenders won't be affected. Some career offenders haven't had their statutory maximum changed. And so those career offenders are subject to the exact same career offender range, whether under the old version of 841 or under the Fair Sentencing Act. But that's not the case for Mr. Charles. Mr. Charles has a reduced statutory maximum, and so his career offender range has been reduced. And, you know, your honor, the principle comes, first of all. But it's reduced indirectly, and I guess that's what makes for the horse race here. Because if a sentencing maximum is changed directly, that is, let's say there was a change to the career offender sentence directly, then it would be obvious that 3582 applies. So here you're right that were he sentenced now, his career offender range would be lower than it was at the time of the original sentencing. But it's still a question of intent as to whether that indirect change is one that he's entitled to take advantage of. Right, your honor. And here's the way we see that. 2D1.1 and 4B1.1 operate differently. And so the short answer is 2D1.1, the drug quantity table, and 4B1.1 operate differently. And so because of the difference in the way they operate, there is no need to specifically amend 4B1.1. That's the short answer, and here's why. 2D1.1 is the quantity table. So when you're assessing a 3582 motion, you start with 2D1.1 and you run through that analysis. And then you turn to the 4B1.1 analysis to do the career offender. Now, career offender is tied to the statutory maximum, so there's no need for anybody to affirmatively amend that, because the whole analysis is triggered by 750, which affects the drug quantity tables. So once you've done the 2D1.1, government raises its hand and says, well, the guy's a career offender. So then you're required to do the 4B1.1 analysis because you're required to determine which one is higher. So then you do the 4B1.1, but there's absolutely no need to affirmatively amend 4B1.1 to match the new ratios the same way there is with 2D1.1. So it's a reasonable inference, I would say at a minimum, that Congress and the Sentencing Commission could have understood that 4B1.1 would be automatically affected because it's necessarily reduced when the statutory maximums are reduced. So I understand Your Honor's point with respect to sort of a downstream effect of the amendment, but it's necessarily part and parcel of the whole analysis because you can't resentence a career offender. You can't assess a career offender's 3582 motion without assessing 2D1.1 and 4B1.1. So the downstream effect necessarily occurs. In a drug case, that's true, because of course there are many other kinds of career offenders. Well, that's right, and some career offenders won't be affected by it. Right. And Congress has made that determination. Congress has said for people whose drug quantities were high enough, their career offender status won't change. But Mr. Charles has a different category that Congress clearly had in mind when it passed the Fair Sentencing Act because, as Your Honor mentioned, if he were sentenced today, he would in fact be subject to a significantly reduced guideline range. And so... You have a little less than your two minutes left if you wanted to save that time. Yes, thank you, Your Honor. Mr. Andre? Thank you, Judge Graber. Jean-Claude Andre on behalf of the United States. Contrary to Mr. Nelson's position, either Congress or the Sentence Commission absolutely would have had an affirmative need to amend either 1B1.10, 4B1.1, or the Fair Sentencing Act itself in order to confer relief for a defendant here. The reason basically is that there are two strict requirements when a court is going to make a decision on how to reduce a sentence under 3582C. They're very technical. One is that the sentence that was originally imposed be based on a sentencing range that has subsequently been reduced by the Sentencing Commission, not by Congress, and also the reduction must be consistent with the 1B1.10 binding policy statements. And a sentence reduction here would not be consistent with those policy statements for at least six reasons that I've contained, three actually in the policy statement itself, 1B1.10, and three more in the application note. All of those application notes and the actual policy statement provisions themselves talk about how the reduction has to be based on an amendment made retroactive and listed in subsection C of 1B1.10. The FSA is not listed there. They also talk about how it has to be action by the Sentencing Commission, again, not Congress. And a bottom defendant's claim, as the Court's been discussing with him, is that somehow there's this indirect effect where when you get to the 4B1.1 analysis in a 3582C motion, you look at the current statutory maximum as opposed to the old. Well, it is somewhat troubling that were he sentenced today, his sentence would be considerably lower or the guideline range that relates to his sentence would be considerably lower. And so that is kind of a troubling aspect. There's kind of a hole, if you will, in the system. The same could be true for the defendant in Augustine, of course, who would have had a lower sentence had he been sentenced today. And so I think there's a good policy reason why not to somehow distinguish this case from the Augustine line of cases, and that is that if you were to apply the FSA effectively retroactively in this context to lower the 4B1.1 range, you would be collapsing the distance between the Augustine defendants and career offenders. And, of course, that's not what Congress or the Sentencing Commission had in mind. They wanted greater distance between Augustine, who we have to assume was a first-time drug dealer and just got caught with a large mandatory minimum quantity, vis-à-vis defendant Charles, who's a repeat drug dealer and who's supposed to be getting a significantly enhanced sentence. And so for that reason, the six courts that we cited, and presumably this Court that's unpublished decision in Andros, have all applied their Augustine analogs to this context to then go ahead and hold that you can't sneak the FSA retroactively into the 4B1.1 calculation in this context. The other point that I would make, and I guess this gets down in the weeds quite a bit, because defendant is relying on a statute for the reduction of his sentence here and not Amendment 750, the proper analysis actually isn't one under 3582C2. We always talk about 3582C2 because that's how defendants plead their motions, and most motions are brought under that section trying to invoke a retroactive guideline amendment. Here, defendant's argument really does come down to trying to invoke a statute. If you take a step back and look at 3582C as a whole, 3582C1B is the provision that deals with statutes. And there, that provision says that the statute has to be expressly retroactive in order to confer jurisdiction on a district court to reduce a sentence. We know from Dorsey, we know from Augustine, that the FSA is not expressly retroactive. It only has a fair implication that it applies prospectively as of its effective date. And so to the extent that defendant's claim relies on the statute, which we believe it does, then it must fail there as well because it's not, the statute's not expressly retroactive. If the Court has no further questions, I'm happy to sit down. Judge Morgia, do you have any questions? No, thank you. We don't want to leave you out. Okay, thank you. Thank you. Mr. Nelson. Thank you. Counsel referred to policy, and I have a different view of policy involved in this case, and that is that Mr. Charles, as he currently stands, is subject to a severe sentence imposed under the old regime. Now, 3582 provides a vehicle for a district judge in his or her discretion to remedy the prior unjust sentence that Mr. Charles received, as recognized by Congress when it passed the Fair Sentencing Act, if the district judge feels that's appropriate under the 3553A factors. So we're not talking about setting Mr. Charles free. We're not talking about necessarily significantly reducing the sentence. We're talking about the judge's discretion under 3582 to reduce Mr. Charles' sentence within the applicable statutory maximum and minimum as the judge finds appropriate. And so with respect to – I lost my train of thought. In any event, that's really what we're talking about here. And when we're talking about 3582 and whether or not the Fair Sentencing Act should apply under 4B1.1 as well as 2D1.1, the question really boils down to, does the court find it appropriate to allow a sort of hodgepodge of statutory regimes to be juggled all at once? Do we apply the Fair Sentencing Act under 2D1.1 on one hand, and in the context of the exact same guideline calculation, switch gears and apply the old statute when we're talking about career defendant? We contend that that's inconsistent with Dorsey. It's inconsistent with the purpose of the Fair Sentencing Act. It's not compelled by any precedent binding on this panel, and we'd ask the court to reject the view. Thank you very much. We appreciate the arguments of both counsel. They've been very helpful. And the case is submitted.
judges: Fernandez, Graber, Murguia